UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BIT HOLDINGS FIFTY-ONE, INC., <br><br> Plaintiff, <br><br> v. <br><br> ULTIMATE FRANCHISES, INC.; ST. GREGORY DEVELOPMENT GROUP, LLC; and JOHN DOES 1-5, <br><br> Defendants. | Civil Action No. 3:18-cv-11010-BRM-TJB <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Dismiss filed by Defendant St. Gregory Development Group, LLC ("St. Gregory") seeking to dismiss Plaintiff BIT Holdings Fifty-One, Inc.'s ("BIT Holdings" or "Plaintiff") Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 10.) BIT Holdings filed an Opposition to St. Gregory's Motion to Dismiss (ECF No. 11) and St. Gregory filed a Reply Brief to BIT Holding's Opposition (ECF No. 12). Having reviewed the submissions filed in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, St. Gregory's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**.

I.  **BACKGROUND**

   A.  **Factual Background**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the plaintiff.

*See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

BIT Holdings is a Maryland corporation and the owner of commercial real estate property located at 500 Hills Drive, Bedminster, New Jersey (the "Rental Premises"). (ECF No. 1 ¶ 1.) Defendant Ultimate Franchises, Inc. ("Ultimate") is a California corporation and the owner of the 18|8 Fine Men's Salon franchise system. (*Id.* ¶ 2.) Ultimate offers for sale franchise agreements to do business as "18|8 Fine Men's Salon." (ECF No. 11 ¶¶ 4, 16.) 18|8 Fine Men's Salon locations offer "high-end styling and grooming" services to men. (*Id.* ¶ 9.) Ultimate is the franchisor of "over 70 locations across the United States in over 25 states and the District of Columbia." (*Id.*) St. Gregory is an Ohio limited liability company headquartered in Cincinnati, Ohio. (*Id.* ¶ 3; Jagers Decl. (ECF No. 10-2) ¶ 2.) St. Gregory is a franchise sales and brand development firm that represents Ultimate in the sale of 18|8 Fine Men's Salon franchises. (*Id.* ¶ 3.)

On August 27, 2014, BIT Holdings and non-party DJ Bunce Associates ("DJ Bunce"), a franchisee of Ultimate that was operating a 18|8 Fine Men's Salon location, entered into a lease agreement (the "Lease") in which DJ Bunce rented the Rental Premises from BIT Holdings. (ECF No. 1 ¶ 8.) The Lease contained an addendum which gave Ultimate the right to assume the Lease in the event of DJ Bunce's default. (*Id.* ¶ 9, Ex. 1.)

In 2017, a dispute arose between Ultimate and DJ Bunce regarding the performance of DJ Bunce's 18|8 Fine Men's Salon franchise location. (ECF No. 10-2 ¶ 3.) Ultimate resolved its

dispute with DJ Bunce by agreeing, among other things, to assume the Lease. (*Id.*)[1] St. Gregory acted as Ultimate's broker in connection with the sale of franchise agreement to DJ Bunce. (*Id.*) Additionally, St. Gregory facilitated the resolution of the dispute between Ultimate and DJ Bunce by entering into a Contribution and Repayment Agreement (the "Repayment Agreement") with Ultimate, pursuant to which St. Gregory contracted to contribute to the operating expenses Ultimate incurred in connection with its assumption of the Lease and operation of the 18|8 Fine Men's Salon at the Rental Premises. (ECF No. 10-2, Ex. A.)[2]

On October 27, 2017, St. Gregory paid $24,520.15 via wire transfer to BIT Holdings' management company for rent payments for the months of June, July, and August 2017. (ECF No. 1 ¶ 27.)[3] No additional payments were made by St. Gregory or Ultimate to BIT Holdings or its management company for rent on the Rental Premises. (*Id.* ¶ 28.) Sometime thereafter, Ultimate defaulted on its obligations under the Lease and on February 22, 2018, BIT Holdings sent Ultimate a notice of monetary default, notifying it that it was in default for nonpayment of rent and that if all past-due rents were not paid by March 2, 2018, BIT Holdings would "pursue remedies available to it under the Lease." (*Id.* ¶ 29.)

---

[1] Effective June 1, 2017, pursuant to the Agreement of Assumption and Assignment of Lease dated May 31, 2017, Ultimate accepted the assignment of the Lease, thereby assuming any and all of the original tenant's rights under the Lease. (ECF No. 1 ¶ 11, Ex. 2.)

[2] Specifically, James Jagers ("Jagers"), St. Gregory's Chief Operating Officer, described the Repayment Agreement as a "partial guarantee" which St. Gregory executed to "help[] facilitate the resolution of the disputes between Ultimate and DJ Bunce" related to the Rental Premises. (ECF No. 10-2 ¶ 3.) Additionally, on April 19, 2017, DJ Bunce, Ultimate, and St. Gregory executed a separate purchase agreement under which DJ Bunce sold and assigned assets to Ultimate and agreed to release St. Gregory from claims surrounding "[DJ] Bunce's purchase and operation of the" 18|8 Fine Men's Salon location. (ECF No. 10-2, Ex. A at ¶ 3.)

[3] This payment was made pursuant to the Repayment Agreement between Ultimate and St. Gregory. (ECF No 10-2 ¶ 3.)

On March 27, 2018, BIT Holdings filed a verified complaint for nonpayment of rent in the Superior Court of New Jersey, Somerset County, Special Civil Landlord/Tenant Part, under docket number SOM-LT-000583-18. (*Id.* ¶ 30.) The summons and complaint were served on Ultimate on April 2, 2018. (*Id.* ¶ 31.) Neither Ultimate nor any tenant or representative appeared for the hearing in Somerset County Superior Court, and on April 20, 2018, a default judgment was entered against Ultimate in favor of BIT Holdings. (*Id.* ¶ 32.) On April 27, 2018, a warrant of removal from the Rental Premises was issued by the Clerk of the Superior Court of Somerset County. (*Id.* ¶ 33.) On May 2, 2018, the warrant was served on Ultimate and on May 9, 2018, the warrant was executed, thereby returning full possession of the Rental Premises to BIT Holdings. (*Id.* ¶¶ 33-34.)

### B. Procedural History

On June 25, 2018, BIT Holdings filed the Complaint against Defendants Ultimate, St. Gregory, and unnamed parties John Does 1-5, asserting causes of action for breach of contact against Ultimate (Count One), undertenant liability for rent against St. Gregory (Count Two), and unjust enrichment against Ultimate and St. Gregory (Count Three). (ECF No. 1.) On October 5, 2018, St. Gregory filed a Motion to Dismiss contending that this Court lacks personal jurisdiction over it and the allegations in the Complaint are too vague such that it cannot frame a responsive pleading. (ECF No. 10.) On October 22, 2018, BIT Holdings filed an Opposition to St. Gregory's Motion to Dismiss (ECF No. 11) and on October 29, 2018, St. Gregory filed a Reply Brief to BIT Holdings' Opposition. (ECF No. 12).

On March 1, 2019, BIT Holdings filed a Motion for Default Judgment against Ultimate, arguing that Ultimate was properly served and failed to file any responsive pleadings. (ECF No. 14.) Ultimate has not filed an opposition to BIT Holdings' Motion for Default Judgment.

## II. LEGAL STANDARD

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86-87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank, F.A.*, 954 F.2d at 145 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing *Carteret Sav. Bank, F.A.*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Daimler*, 571 U.S. at 119. General jurisdiction requires only

continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

6

## III. DECISION

St. Gregory contends this Court should grant its Motion to Dismiss as this Court lacks personal jurisdiction over it, and because the allegations in the Complaint are so vague and ambiguous that St. Gregory "cannot frame a responsive pleading." (ECF No. 10-1 at 4-10.) BIT Holdings counters that it has demonstrated a *prima facie* case for the exercise of this Court's jurisdiction and that the Complaint is sufficiently definite as it provides St. Gregory with fair notice of the claims against it. (ECF No. 11 at 7-21.) This Court addresses each argument in turn.

### A. Personal Jurisdiction

St. Gregory contends this Court should grant its Motion to Dismiss as this Court lacks general and specific personal jurisdiction over it, and that accordingly, the Complaint should be dismissed as against St. Gregory. (ECF No. 10-1 at 4-8.) BIT Holdings argues it has demonstrated a *prima facie* case for this Court's exercise of personal jurisdiction as it has pled that St. Gregory purposefully directed its conduct towards New Jersey, its claims arise out of – and are closely related to – St. Gregory's contacts with New Jersey, and St. Gregory cannot demonstrate that this Court's exercise of personal jurisdiction would result in a "severe disadvantage." (ECF No. 11 at 7-19.)

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent as allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996).

Personal jurisdiction may be either general or specific. *Silent Drive, Inc. v. Strong Indus.*,

326 F.3d 1194, 1200 (Fed. Cir. 2003). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. However, "[s]ince *International Shoe*, 'specific jurisdiction has become the centerpiece of modern jurisdictional theory.'" *Daimler AG*, 571 U.S. at 119 (quoting *Goodyear*, 564 U.S. at 925).

There is a three-prong test to determine whether a court possesses specific personal jurisdiction over a particular defendant. *Sandy Lane*, 496 F.3d at 317. "First, the defendant must have 'purposefully directed [its] activities' at the forum." *Id.* (quoting *Burger King*, 471 U.S. 462, 472 (1985) (quotation marks omitted)). The first prong is a "threshold" inquiry. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct

8

and not the unilateral activities of the plaintiff." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980). Indeed, the *Sandy Lane* inquiry is meant to ensure that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated contacts or as a result of the unilateral activity of some other party." *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 649 A.2d 379, 386 (N.J. 1994).

BIT Holdings does not assert there is a basis for general jurisdiction over St. Gregory, but only for specific personal jurisdiction given St. Gregory's alleged deliberate and continuous contacts with New Jersey. (ECF No. 11 at 12.)[4] Accordingly, this Court analyzes its ability to assert personal jurisdiction over St. Gregory pursuant to the three-prong, specific personal jurisdiction test outlined in *Sandy Lane*.

First, the defendant must have "purposefully directed [its] activity" at the forum. *Sandy Lane*, 496 F.3d at 317 (citation omitted). The only allegations in the Complaint tying St. Gregory's purposeful conduct to New Jersey are its wire transfer payment to BIT Holdings' management company for the outstanding rent payments on the Rental Premises for the months of June, July, and August 2017 (ECF No. 1 ¶ 27), and BIT Holdings' contention that St. Gregory, and some unknown entities, "occupied the Rental Premises, became lessees and/or undertenants, and played a role in operating the 18|8 Fine Men's Salon." (ECF No. 1 ¶¶ 49, 56). Each of these allegations are insufficient to satisfy the first prong of the *Sandy Lane* inquiry.

St. Gregory asserts that BIT Holdings' allegation that it paid delinquent rent on the Rental Premises pursuant to a guarantor agreement is inadequate to establish personal jurisdiction as there

---

[4] Specifically, BIT Holdings notes it "does not assert that there is a basis for general jurisdiction over St. Gregory in New Jersey based on such continuous contacts," but rather that "the controlling facts for the analysis are that St. Gregory deliberately direct its conduct toward New Jersey." (ECF No. 11 at 12.)

9

is no allegation that the management company is located in New Jersey, and that even if the management company were in New Jersey, "a single payment to [BIT Holdings] or its agent in New Jersey does not confer specific jurisdiction over St. Gregory in New Jersey." (ECF No. 10-1 at 8.) Contrary to BIT Holdings' contentions, New Jersey courts have made clear that "standing alone, [a] guarantee cannot establish minimum contacts necessary for [a] Court, through New Jersey's 'long-arm' statute, to assert personal jurisdiction" over a defendant. *CPS Chem. Co. v. McIntire*, No. 88-3259, 1988 WL 112543, at *2 (D.N.J. Oct. 25, 1988); *see also Reverse Vending Assocs. v. Tomra Sys. US, Inc.*, 655 F. Supp. 1122, 1127 (E.D. Pa. 1987) (holding "although the guaranty plainly had commercial consequences, any benefit derivable [by the party] from its guaranty are too attenuated to subject it to this forum's jurisdiction); *see also Dollar Saving Bank v. First Security Bank of Utah, N.A.*, 746 F.2d 208, 215 (3d Cir. 1984) (holding that a wire transfer of certain contractual repayments, where the defendant had "no direct dealings with [the plaintiff] other than the wire transfer of payments," did not create an "expectation of submission to the jurisdiction of Pennsylvania courts"). Here, as in *Dollar Saving Bank*, the allegation of St. Gregory's wire transfer to BIT Holdings' management company – which is not alleged to be a New Jersey company – is likewise inadequate to establish personal jurisdiction over St. Gregory.

BIT Holdings argues that courts "frequently find jurisdiction proper over out-of-state defendants who have executed, outside of the forum state, a guaranty of obligations . . . and construe that conduct as directed towards the forum state." (ECF No. 11 at 13.) In support of this contention, BIT Holdings relies primarily on *Unicon Invs. v. Fisco, Inc.*, 349 A.2d 117, 122 (N.J. Law. Div. 1975), which held that personal jurisdiction is established, pursuant to *Avedel Corp. v. Mecure*, 277 A.2d 207, 211 (N.J. 1971), when "an out-of-state defendant enter[s] into an agreement which he knew or should have known would have substantial effects in New Jersey."

10

In *Unicon*, however, the court determined that its exercise of personal jurisdiction was appropriate as the guaranty was a direct contract between the defendant and the plaintiff's wholly-owned subsidiary, and because it included a general guaranty of all of the tenant's obligations under the lease, including those to make certain repairs on the subject rental property. *Unicon*, 349 A.2d at 119-22.[5] Here, by contrast, St. Gregory agreed only to guarantee a limited amount of the rent due, and importantly, it had no direct contract with BIT Holdings or any other New Jersey entity.

Additionally, BIT Holdings cites several persuasive authorities to support its argument, however, each case on which it relies is distinguishable from the facts herein to render its position unconvincing. For instance, BIT Holdings cites *Noorani v. Sugarloaf Mills Ltd. P'ship*, 708 S.E.2d 685, 687-89 (Ga. Ct. App. 2011), which held that Georgia's exercise of personal jurisdiction over a non-resident guarantor of a commercial lease comported with due process. However, the defendant in *Noorani* had other contacts with the forum sufficient to bestow upon the court personal jurisdiction, including multiple visits to review records, check inventory, and discuss matters associated with the premises with a representative of the plaintiff. *Noorani*, 708 S.E.2d at 687-88.

BIT Holdings further cites *Bankers Tr. Co. v. Nordheimer*, 746 F. Supp. 363, 368 (S.D.N.Y. 1990) for the proposition that tendering a guaranty payment constitutes "supplying goods or services in the state" and *Meachum v. Worthen Bank & Trust Co., N.A.*, 682 S.W.2d 763,

---

[5] The holding in *Avdel* also does not provide support to BIT Holdings' position. In *Avdel*, the New Jersey Supreme Court held that a court's exercise of personal jurisdiction over a defendant is appropriate where the defendant "should have anticipated that his conduct would have significant effects in that state." *Avdel*, 277 A.2d at 211. The out-of-state defendant in *Avdel* had far more contact with New Jersey than did St. Gregory in this matter. Specifically, the *Avdel* defendant contracted with a New Jersey company to manufacture rivets in New Jersey, entered New Jersey on multiple occasions to negotiate its contracts, and traveled to New Jersey to return "substantial" numbers of rivets that had been purchased. *Id.* at 211-12.

766 (Ark. Ct. App.), *cert. denied* 474 U.S. 844 (1985), which upheld the trial court's assertion of personal jurisdiction where an out-of-state defendant guaranteed a corporation's lease obligations. However, the *Nordheimer* court dealt with unrelated, dispositive issues of agency under the New York's CPLR in ultimately concluding it had personal jurisdiction over the defendants. 746 F. Supp. at 368. Additionally, the out-of-state defendant in *Meachum* had significantly more unilateral contacts with Arkansas than did St. Gregory with New Jersey, having sent its own financial statements to Arkansas and signed a guaranty agreement on an Arkansas property involving a lease between two Arkansas corporations. 682 S.W.2d at 766. Finally, this Court is also unpersuaded that *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137-38 (6th Cir. 1982) provides any support to BIT Holdings' position, as the out-of-state defendant-guarantor in that matter had a cognizable financial stake in the underlying agreement it guaranteed.[6] Here, there is no allegation in the Complaint that St. Gregory had a financial stake in the satisfaction of the Lease or in the Rental Premises in any capacity.

Next, BIT Holdings' allegation that St. Gregory "occupied the Rental Premises, became lessees and/or undertenants, and played a role in operating the 18|8 Fine Men's Salon" is also insufficient to establish personal jurisdiction over St. Gregory. (ECF No. 1 ¶¶ 49, 56.) The Third Circuit has made clear that "at no point may a plaintiff rely on the bare pleadings alone in order to

---

[6] Indeed, in determining the defendants were subject to personal jurisdiction in Kentucky, the Sixth Circuit noted that the

> "guarantors were either shareholders or through marital rights had an economic interest in [the underlying agreement]. Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of 'conduct and connection with the for[u]m State' that makes it reasonable to 'anticipate being haled into court there' when the underlying contract is breached.'"

*Nat'l Can Corp.*, 674 F.2d at 1138 (citing *World-Wide Volkswagen*, 444 U.S. at 297).

withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction . . . . Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67). Here, BIT Holdings provides no affidavits or other competent evidence whatsoever demonstrating that St. Gregory actually occupied the Rental Premises. On the contrary, St. Gregory submitted a declaration from its Chief Operation Officer indicating that it never operated out of or occupied the Rental Premises. (ECF No. 10-2 ¶ 4.) Accordingly, BIT Holdings' allegation that St. Gregory occupied the Rental Premises is inadequate to establish personal jurisdiction over St. Gregory.

BIT Holdings has not demonstrated that St. Gregory has purposefully directed its activities at the forum, and therefore, the first prong of the *Sandy Lane* analysis is not satisfied. As the first prong of the *Sandy Lane* analysis is a "threshold" inquiry that must be satisfied analyzing prongs two and three, this Court need not determine whether the second and third prongs of the analysis are satisfied. *Hanson*, 357 U.S. at 253. Accordingly, St. Gregory's Motion to Dismiss is **GRANTED WITHOUT PREJUDICE**.

### B. Sufficiency of Complaint

Second, St. Gregory argues that the allegations in the Complaint are so vague and ambiguous that it cannot frame a responsive pleading. (ECF No. 10-1 at 9-10.) As this Court has dismissed the Complaint for lack of personal jurisdiction, it need not address St. Gregory's argument concerning the sufficiency, or lack thereof, of the allegations in the Complaint.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE** as set forth herein and in the accompanying order.

**Date: May 30, 2019**                    */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**